**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------
**CHRISTEL RUSSITANO,**

                                        **Plaintiff,**

        **v.**                                        **6:14-CV-403**


**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**

                                        **Defendant.**
-------------------------------------------
THOMAS J. McAVOY
Senior United States District Judge


                        <u>**DECISION AND ORDER**</u>

        Christel Russitano ("Plaintiff") brought this suit under
Section 205 (g) of the Social Security Act ("Act"), as amended,
42 U.S.C. § 405(g), to review a final determination of the
Commissioner of Social Security ("Commissioner"). The
Commissioner denied her application for Disability Insurance
Benefits ("DIB") under Title II of the Act, and Supplemental
Security Income ("SSI") benefits under Title XVI of the Act.
Pursuant to Northern District of New York General Order No. 8,
the Court proceeds as if both parties had accompanied their
briefs with a motion for judgment on the pleadings.

**I. BACKGROUND**

        Plaintiff applied for DIB and SSI benefits on October 3,
2011 and October 4, 2011, respectively, alleging disability
beginning June 24, 2011, due to hypothyroidism, rheumatoid
arthritis, and depression. Tr.10. The Agency denied her claim on

April 6, 2012 and Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") on April 13, 2012. Id. Plaintiff was represented by counsel at the video hearing held on December 13, 2012. Tr. 22-47. On January 4, 2013, ALJ Julia D. Gibbs denied Plaintiff's request for Social Security benefits. Tr. 8-18. Plaintiff submitted a timely request for review by the Appeals Council, which was subsequently denied on February 28, 2013. Tr. 1-6. The decision of the ALJ became the Commissioner's final decision in the case. This action followed.

Plaintiff commenced this civil action on April 10, 2014. Dkt. No. 1. Plaintiff also filed a motion to proceed *in forma pauperis*. See Dkt. No. 2. Magistrate Judge Christian F. Hummel granted the motion in an Order dated April 17, 2014. Dkt. No. 4.

Both parties have fully briefed the issues. Dkt. No. 10; Dkt. No. 12. In her brief, Plaintiff argues that ALJ Gibbs' decision was not supported by substantial evidence because the ALJ failed properly to consider Plaintiff's Functional Capacity Evaluation ("FCE") in her Residual Functional Capacity ("RFC") assessment. See Dkt. No. 10. Plaintiff further argues that the ALJ failed to access properly Plaintiff's credibility in making subjective complaints. Id. The Commissioner argues that the Commissioner's findings of fact of were supported by substantial evidence. See Dkt. No. 12.

On June 5, 2015, the Court terminated its referral to Magistrate Judge Hummel and decided to resolve the case directly, without Report and Recommendation. Dkt. No. 13.

## II. THE COMMISSIONER'S DECISION

Under the Act, "disability" is defined in basically the same way for both DIB and SSI programs. <u>See</u> 42 U.S.C. §§ 423(d) and 1382c(a)(3). An individual is defined as disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," and "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A); 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In evaluating disability claims, the Commissioner follows a sequential five-step analysis. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920. This analysis is recognized as valid by the Supreme Court and has been the proper approach in determining disability. <u>Goodale v. Astrue</u>, 32 F. Supp. 3d 345, 352 (N.D.N.Y

3

2012); see Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct.

2287, 96 L.Ed.2d 119 (1987).

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity. If [she]
> is not, the [Commissioner] next considers whether the
> claimant has a "severe impairment" which significantly
> limits [her] physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the
> third inquiry is whether, based solely on medical evidence,
> the claimant has an impairment which meets or equals the
> criteria of an impairment listed in Appendix 1 of the
> regulations. If the claimant has such an impairment, the
> [Commissioner] will consider [her] disabled without
> considering vocational factors such as age, education, and
> work experience . . . . Assuming the claimant does not have
> a listed impairment, the fourth inquiry is whether, despite
> the claimant's severe impairment, [she] has the residual
> functional capacity to perform [her] past work. Finally, if
> the claimant is unable to perform [her] past work, the
> [Commissioner] then determines whether there is other work
> which the claimant can perform.

Dean v. Astrue, 2011 U.S. Dist. LEXIS 86900, *3-4 (N.D.N.Y. July

14, 2011) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d

Cir. 1982)). At the first four steps, the plaintiff bears the

burden to establish disability. Id.; Melville v. Apfel, 198 F.3d

45, 52 (2d Cir. 1999). However, when it comes to the final step,

the burden shifts to the Commissioner. Id.

In the case at bar, the ALJ concluded that Plaintiff was

not disabled within the meaning of the Act after performing the

five-step analysis. See Tr. 10-17. At step one, the ALJ found

that Plaintiff had not engaged in substantial gainful activity

since June 24, 2011. Tr. 12. Under step two, the ALJ found that

Plaintiff suffered from the severe impairments of

hypothyroidism, bilateral hand arthritis and rheumatoid
arthritis. Tr. 12-13. At step three, the ALJ found that
Plaintiff did not have an impairment or combination of
impairments that met or medically equaled the listed impairments
in 20 C.F.R §§ 404, Subpart P, Appendix 1. Tr. 13. Prior to step
four, the ALJ evaluated Plaintiff's RFC and found that, despite
her severe impairments, Plaintiff still possesse the RFC to
perform light work as defined in related regulations. Tr. 13-15.
Specifically, the ALJ found that Plaintiff had no restrictions
with walking or standing; was limited to lift no more than 5
pounds; could not bend, kneel, and squat repetitively; and was
precluded from fine finger manipulation, such as zipping,
buttoning, and typing. Tr. 13. However, at step four, the ALJ
concluded that Plaintiff's RFC was insufficient for her to
perform her past relevant work. Tr. 15. The ALJ then proceeded
to step five and determined that Plaintiff's RFC, combined with
her age, education and work experience, allowed Plaintiff to
perform other jobs that existed in significant number in the
national economy. Tr. 15-17. The ALJ thereby concluded that
Plaintiff was not under a disability as defined by the Act and
was not qualified for the Social Security benefits she had
applied for. Tr. 17.

## III. STANDARD OF REVIEW

When reviewing a determination denying disability benefits, the Court may not determine *de novo* whether an individual is disabled. Goodale v. Astrue, 32 F. Supp. 3d 345, 351 (N.D.N.Y 2012)(citing 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990))(emphasis added).

The Court's review of the Commissioner's decision is limited to two inquiries. See 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 U.S. Dist. LEXIS 10430, 1997 WL 426203, at *4 (N.D.N.Y. July 16, 1997)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also, Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo*

whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted).

In the context of Social Security cases, substantial evidence consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir.1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

**IV. DISCUSSION**

Plaintiff offers two grounds for challenging the ALJ's RFC determination: 1) The ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly discredited the FCE results, and 2) the ALJ erred in failing to assess properly Plaintiff's credibility when establishing a RFC, making that determination unsupported by substantial evidence. Each is addressed below.

**A. The ALJ Properly Accorded Weight to the Evidence**

In her decision, ALJ Gibbs concluded that, despite her physical conditions, Plaintiff retains the RFC to perform jobs that exist in significant numbers in the national economy, such as office helper, furniture rental consultant, and charge account clerk. Tr. 16. In reaching that conclusion, the ALJ accorded significant weight to the report of a consultative examiner, Dr. Pamela Tabb, as well as Plaintiff's treatment records, and accorded little weight to a Functional Capacity Evaluation ("FCE") conducted by a physical therapist ("PT"), Ms. Russitano Grenier, which was significantly more limiting. Tr. 15. Plaintiff now contends that the ALJ's RFC finding is not supported by substantial evidence because the FCE result was improperly discounted by the ALJ in the RFC assessment. The Commissioner argues that ALJ's RFC finding is supported by substantial evidence because the FCE is inconsistent with other medical evidence. The Court agrees with the Commissioner.

"RFC describes what a claimant is capable of doing despite her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms." Burgen v. Colvin, 2014 U.S. Dist. LEXIS 178837, *7 (N.D.N.Y. Nov. 26, 2014)(citing Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945).

The ALJ, in evaluating Plaintiff's RFC, must address her ability to sit, stand, walk, lift, carry, push, and pull. Garber v. Astrue, 2012 U.S. Dist. LEXIS 43845, *8 (N.D.N.Y. Mar. 2, 2012)(citing 20 C.F.R. §§ 404.1545(b), 404.1569a). "Impairments which result in postural and manipulative limitations must also be considered." Id.; see also 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e). In making these assessments, the ALJ must consider objective medical facts, diagnoses and medical opinions, as well as a plaintiff's subjective symptoms, such as pain and descriptions of other limitations. Polynice v. Comm'r of Soc. Sec., 2013 U.S. Dist. LEXIS 165159, *25-26 (N.D.N.Y. Oct. 18, 2013)(citing 20 C.F.R §§ 404.1545, 416.945). See Martone, 70 F. Supp. 2d at 150(citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).

Here, the ALJ reasonably accorded great weight to the state agency medical consultant's opinion of Dr. Tabb, because an opinion by a medical doctor is an acceptable medical source under social security disability regulations and a consultative examiner's opinion can constitute substantial evidence in support of the ALJ's RFC determination. 20 C.F.R. §404.1513(a)(1); Garber, 2012 U.S. Dist. LEXIS 43845, at *9(citing Monquer v. Heckler, 722 F.3d 1033, 1039 (2d Cir. 1983); see Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir.1995)).

Dr. Tabb examined Plaintiff on March 29, 2012. Tr. 277-80. Dr. Tabb observed that Plaintiff could walk on heels and toes without any difficulty (though Plaintiff could only squat 25% due to pain), that Plaintiff used no assistive device for standing, that Plaintiff needed no help in getting on and off an examination table during the exam, and that Plaintiff had no difficulty rising from a chair. Tr. 278-79. Based on these observations, Dr. Tabb concluded that Plaintiff's gait and station were normal. Tr. 278. Dr. Tabb also found that Plaintiff's hand and finger dexterity were intact, because Plaintiff had 4/5 grip strength on the right hand and 5/5 grip strength on the left, and because Plaintiff was able to zip, button, and tie. Tr. 280. Dr. Tabb further noted that Plaintiff had full range of motion of shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally, while there was only minimal tenderness over the left knee. Tr. 279. Based on all the findings above, Dr. Tabb concluded that Plaintiff had mild restrictions in repetitive bending, kneeling, and squatting, or activities that require fine dexterity. Tr. 280. Dr. Tabb's findings lend support to the ALJ's RFC determinations.

Plaintiff's treatment records also support the ALJ's RFC determination. Tr.15. Nothing in these records indicates that, except for some chiropractic adjustments, Plaintiff received any treatment to alleviate her allegedly disabling arthritis. See

Tr. 289-301. In fact, the records show that Plaintiff told her primary care physician, Dr. Lynne DiGennaro, that she was hesitant to take medications to treat arthritis due to her concerns about side effects, and that she would prefer natural remedies. Tr. 15; Tr.317. Similarly, when Plaintiff went to see a rheumatologist, Dr. Martin Morell, on May 9, 2012, she indicated to the doctor that she did not want any treatments, except for going to a tumor necrosis factor inhibitor. Tr. 332. Plaintiff also had several physical therapy sessions, during which she only complained of intermittent pain, which was alleviated by the therapy sessions. Tr. 194, 199, 201, 203, 205. Plaintiff also reported improvements in symptoms and increase in activities after these therapy treatments. Tr. 199, 201, 203, 205. These facts support the conclusion that while Plaintiff's pain may have been continuous and uncomfortable, it is not disabling or severe.

The records also demonstrate that in the examination conducted before Plaintiff's nasal surgery, Dr. DiGennaro found that Plaintiff did not complain about her rheumatoid arthritis, and that Plaintiff had normal gait, full range of bilateral motions, symmetric reflexes, and no motor or sensory deficits. Tr. 228. During her rheumatological visit, Dr. Morell found Plaintiff to be neurologically intact, with synovitis over her right hand, prominent AC joint decreased internal rotation in

the left shoulder, and only a minimal decrease in her full
finger curl. Tr. 332. Plaintiff also had x-rays as recommended
by Dr. Morell and the results showed no evidence of acute
abnormality in both hands. Id.; Tr. 301, 310. These findings are
consistent with Dr. Tabb's observations and conclusions, and
also lend support to the ALJ's RFC determinations.

Based on the above findings, the Court agrees with the
Commissioner that, considered together, Plaintiff's medical
records and therapy notes revealed that she had gone through
only limited and conservative medical treatments for arthritis.
Dkt. No. 12 at 11. These records also fail to show that
Plaintiff's impairments were severe or disabling enough to
preclude her from all types of work. Id. A reasonable mind in
the ALJ's position would accept these findings as substantially
adequate to support the ALJ's RFC determinations.

Contrary to Plaintiff's contention, the ALJ did not
improperly discredite PT Grenier's statement in Plaintiff's FCE
that Plaintiff was incapable of performing sedentary work.
Plaintiff argues that the FCE findings are supported by medical
examinations conducted by the doctors, despite the fact that the
FCE is more limiting than the ALJ's RFC findings and indicates
an *inability* to kneel, squat or crouch, crawl, and even stoop.
Tr. 15. The Court disagrees. The findings of Dr. Tabb, Dr.
DiGennaro, and Dr. Morell, as well as the physical therapy

treatment notes, showed *mild restrictions* in repetitive bending, kneeling, and squatting, or activities that require fine dexterity, a *full* range of bilateral motions, a *minimal* decrease of motion in hands, and *normal* gait. See Tr. 228, 280, and 332. The difference between "inability" and "mild restrictions" is evident. The medical records do not support a finding that Plaintiff is unable to engage in activities. Thus, the FCE is not supported by the medical findings and its more limiting determinations are inconsistent with the medical records that showed adequate motions and normal gait.

This inconsistency calls into question the reliability of the FCE statement, especially in light of the fact that the FCE was conducted by Plaintiff's physical therapist, while the other medical examinations were conducted by practicing doctors. Since the ALJ could resolve a genuine conflict in evidence at her discretion, it was appropriate and reasonable for her to accord little weight to the FCE, when compared to the other medical evidence. Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

PT Grenier's opinion is also not entitled to controlling weight because physical therapist is not listed as one of the acceptable medical sources under social security disability regulations and the ALJ had the discretion to give the opinion of a non-acceptable medical source the weight she believed it deserved based on the facts of the particular case. See 20

C.F.R. §404.1513(a)(1); Diaz, 59 F.3d at 313, 314; see also,
e.g., Cascio v. Astrue, No. 10-CV-5666, 2012 WL 123275, at *3
(E.D.N.Y. Jan. 17, 2012) (deciding that the ALJ properly found
the opinions of the physical therapists should not receive
substantial weight, taking into account other medical evidence
in the record, such as the opinion of a consultative examiner,
as well as the fact that physical therapist is not listed as an
acceptable medical source).

As for Plaintiff's argument that the FCE is not a medical
opinion, but objective evidence, the Court agrees with the
Commissioner that this argument lacks merit. Dkt. No. 10 at 5;
Dkt. No. 12 at 14. The Commissioner correctly points out that
objective evidence, such as a magnetic resonance imaging (MRI)
or an x-ray, should show objectively what is or is not present.
Dkt. No. 12 at 14; see Burgess v. Astrue, 537 F.3d 117, 131 (2d
Cir. 2008)(asserting that MRI and x-ray were both objective
evidence). By contrast, Plaintiff could control the level of
effort she put forth in performing the tasks in the FCE. See Tr.
324-327. Some tasks, including grip tests and endurance tests,
do not specify the effort required to perform them. See Tr. 327.
For some other tasks, the highest level of effort used is
specified as the effort used when "[Plaintiff] and therapist
agree that [Plaintiff] has reached a safe, maximal effort,"
which is subjective considering the "agree" part. Tr. 324, 325.

14

Thus, for example, when Plaintiff "could not" kneel during the evaluation, it is possible that she only used a minimal effort, while she and the PT "agreed" that she had used her maximum. Although this is merely a speculation, the existence of the possibility of such subjective control renders the FCE not objective evidence.

All in all, the ALJ properly accorded little weight to the FCE, while according great weight to other medical opinions, which constituted substantial evidence in support of the ALJ's RFC determination.

## B. The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff further asserts that in assessing Plaintiff's subjective complaints of pain the ALJ failed to apply the correct legal standard. Dkt. No 10 at 7. Plaintiff contends that a lack of objective evidence should not be the sole ground in rejecting the subjective complaints. Id. Plaintiff further argues that the ALJ erroneously concluded that there was no objective evidence in support of Plaintiff's subjective complaints, because the FCE results provided the objective evidence needed. Id. at 8-9.

### i. The ALJ Applied the Correct Legal Standard in the Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ failed to apply the correct legal standard because "strong" objective evidence is not required in establishing credibility and a lack of objective

support should not be the basis for rejecting the credibility of Plaintiff's subjective statement. Id. at 8. This argument is meritless.

"[The ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Hollenbeck v. Comm'r of Soc. Sec., 2013 U.S. Dist. LEXIS 98002, *55 (N.D.N.Y. June 20, 2013) (quoting Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)) (internal quotations omitted). The ALJ must apply a two-step analysis when assessing Plaintiff's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged . . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

McCracken v. Colvin, 2014 U.S. Dist. LEXIS 65424, *14-15 (N.D.N.Y. May 13, 2014)(quoting Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010)) (quotations and citations omitted).

If the ALJ determines that objective medical evidence alone does not support Plaintiff's testimony concerning the intensity, persistence or functional limitations associated with her impairments, the ALJ must consider additional factors in assessing Plaintiff's testimony. McCracken, 2014 U.S. Dist. LEXIS 65424 at 15-16. These factors include: "(1)daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms." Id. (citing 20 C.F.R. §§416.929(c)(3)(i)-(vi)).

In reviewing the ALJ's credibility determination, the Court does not demand perfection. Crofoot v. Colvin, 2013 U.S. Dist. LEXIS 142035,*29 (N.D.N.Y. May 8, 2013). "The determinative question is . . . whether [the ALJ] explained how Plaintiff's subjective testimony is not supported or undermined by other evidence, and whether the ultimate credibility finding is supported by substantial evidence." Id. "It is not the prerogative of the [C]ourt to reweigh credibility choices." Id. at *31.

After reviewing ALJ Gibbs' decision, the Court finds that there is no obvious legal error in the ALJ's approach to assessing the credibility of Plaintiff's subjective testimony,

because the ALJ engaged in the two-step analysis, considered the objective factors, and articulated specific reasons for her determination.

After finding the existence of medically determinable impairments at step one, the ALJ proceeded to step two and used the phrase, "devoid of strong objective evidence", in the evaluation of Plaintiff's allegation of "a complete inability to perform *any* work activity due to problems stemming from arthritis." Tr. 14(emphasis added). The ALJ first noted that the evidence in the record that could possibly lend any support to Plaintiff's allegation were assessments of her condition and subjective complaints of pain, which is all subjective evidence. To support her conclusion, the ALJ stated that despite Plaintiff's indications that she was disabled because she could not perform massage therapy work, Plaintiff was not precluded from *all* work activity. Tr. 14. In fact, Plaintiff had worked as a teacher's assistant for four years after working as a massage therapist, and she left this job for budget reasons, not disability, in July, 2011, one month after the beginning of the alleged disability. Id.;see Tr. 26, 157. Considering these facts, the Court finds that despite the ALJ's phrasing, her reasoning is sufficient to support the conclusion that this allegation was devoid of objective evidence. Moreover, in her brief, Plaintiff does not specify any objective evidence in the

record that could discredit the ALJ's reasoning and conclusion. See Dkt. No. 10. In fact, Plaintiff only relies on the argument that the regulations have stated that subjective statements "cannot not be rejected solely because they are not substantiated by objective medical evidence." Dkt. No. 10. at 9. By saying this, Plaintiff acknowledges that her statement regarding the inability to perform *any* work was not supported by any objective medical evidence.

Contrary to Plaintiff's contention, the ALJ did not rely solely on the lack of objective evidence in reaching the determination that Plaintiff's subjective complaints were not entirely credible. The ALJ also evaluated the additional factors listed in the Act, including daily activities, type, dosage, effectiveness and side effects of medications taken, and other treatments and measures taken to relieve symptoms. See Tr. 13 and 15.

With regard to Plaintiff's daily activities, after considering the evidence in the record, the ALJ found that Plaintiff was, "for the most part, able to (1)engage in activities of daily living in an appropriate and effective manner, on an independent and sustained basis; (2)interact independently, appropriately, effectively, and on a sustained basis with other individuals; and (3) sustain focus, attention and concentration sufficiently long enough to permit the timely

and appropriate completion of tasks commonly found in work settings." Tr. 13.

As for medications and treatments, the ALJ noted that Plaintiff only had limited and conservative treatments for her arthritis due to her concern for side effects; "there [was] no indication [in Plaintiff's treatment records] that the claimant was even on an aspirin regime or other non-steroidal anti-inflammatory drug";and the records "[failed] to establish even minimal limitations with arthritis." Tr. 15.

Taken as a whole, the Court finds the ALJ's credibility determination survives judicial review under the deferential substantial evidence standard and the Court will not substitute its own opinion for the ALJ's credibility determination. Crofoot, 2013 U.S. Dist. LEXIS 142035, *31(concluded that the ALJ's reasons, some of which were weak or even petty, still satisfied the requirement of "more than a scintilla" and could pass the substantial evidence test, and thus, the court found there was no basis to challenge the ALJ's credibility findings); See e.g., Caza v. Comm'r of Soc. Sec., 2012 U.S. Dist. LEXIS 77046, *21-22 (N.D.N.Y. April 12, 2012) (the court did not reject the ALJ's credibility finding that the court determined was supported by substantial evidence, because the ALJ had cited the record correctly and there was actual inconsistencies in plaintiff's statements).

### ii. The FCE is not Objective Evidence

Plaintiff also argues that her subjective complaints are credible because they are supported by the FCE, which is objective evidence according to Plaintiff. Dkt. 10 at 9. The Court disagrees. As discussed, the FCE conducted by PT Grenier is not objective evidence because a participant has subjective control over the level of effort she uses to perform the tasks.

In sum, the ALJ did not err in finding Plaintiff's subjective complaints not entirely credible and the ALJ's decision is supported by substantial evidence in the record and will be affirmed.

## V. CONCLUSION

For the above reasons, the Commissioner's decision is **AFFIRMED**, and Plaintiff's complaint is **DISMISSED IN ITS ENTIRETY**.


IT IS SO **ORDERED**.

Dated:July 23, 2015


Thomas J. McAvoy
Senior, U.S. District Judge